BARTHOLOMEW SMALL *versus* SAMUEL A. GILMAN.

Where, in an action of assumpsit, it is alleged in the writ that the defendant, after giving the plaintiff a permit to cut timber for a specified period on all of a certain tract of land, except a part which he had previously engaged to a third party, and which part the defendant, at the making of the contract, described and defined; but that the defendant, afterwards, granted a permit to the third party covering a much larger territory than he had represented to the plaintiff as engaged, a refusal by the Court to instruct the jury, that the plaintiff may recover damages whether the false representations were made to him by the defendant from misrecollection or mistake, or with a fraudulent intent, was not erroneous, if the writ does not allege a promise on the part of the defendant that a specified portion of the tract in question was the part engaged to the third party.

Neither was it erroneous, in such an action, for the Court to refuse to instruct the jury, that, if the defendant gave the plaintiff a permit which cov-

ered a certain tract, and afterwards gave a third party a permit embracing a part of the same tract, on which said party cut timber included in the plaintiff's permit, the plaintiff is entitled to damages in this form of action. Such acts would be tortious, and, if proved, would not support the promise alleged in the plaintiff's writ.

A letter to the plaintiff from his agent to whom the alleged representations were made by the defendant, though written immediately after the transaction, was no part of the *res gestæ*, and was properly excluded. Such a letter, relating to things past, and about which the agent might be called as a witness, was but hearsay.

Neither the writ, judgment or docket entries in a former action of the holder of the second permit against the holder of the first, are proper evidence in a suit between the latter and the party who granted the permits.

THIS was an action of ASSUMPSIT.

On the 14th October, 1856, the defendant gave the plaintiff a permit " to enter, with two six ox teams or its equivalent, upon that part of No. 4, range 3, west from the east line of the State, which lies west of the east branch of the Mattawamkeag, (excepting that part engaged to Josiah Jellerson,) and north of a line running east and west, and three and a half miles north of the south line of said town, and to cut and remove therefrom spruce and pine timber suitable for board logs," &c.

On the third day of November, 1856, the defendant gave Jellerson a permit " to enter with two or more horse teams upon that part of No 4, range 3, W. E. L. State, belonging to said Gilman, commencing on the south line of said Gilman's land, and west of the east branch of the Mattawamkeag, and carrying a width of one mile, and to extend west a sufficient distance to make out a winter's work for two horse teams," &c.

The declaration in the plaintiff's writ alleges, that the defendant, being the owner of township No. 4, promised and engaged to grant the plaintiff a permit on all of said township west of the east branch of the Mattawamkeag, except what he had promised thereon to Josiah Jellerson, and at the same time represented to Rufus Mansur, agent of the plaintiff, that the portion he had engaged to Jellerson commenced on the south line of the plaintiff's land, west of the east

branch of the Mattawamkeag, of the width of one mile, and extending west to the first point of the lake, and assured Mansur for the plaintiff, that he might operate on all the rest of the land; that, relying on the representations of the defendant, the plaintiff took a permit as proposed, and bound himself to take the ensuing winter not less than one million feet board measure; that the defendant afterwards, unmindful of his engagements to the plaintiff, gave a permit to Jellerson for two or more horse teams on that part of No. 4, commencing on the south line of Gilman's land, and west of the east branch of the Mattawamkeag, carrying a width of one mile, and extending west a sufficient distance to make a winter's work for two horse teams, on which permit Jellerson entered and cut 300,000 feet board measure west of the easterly point of the lake aforesaid, not finding, as he truly alleged, timber sufficient east thereof, and that said Jellerson also cut 50,000 feet north of the north line given him in his permit, and this he did by the license and authority of the defendant, for all which the defendant received stumpage from Jellerson; and the plaintiff avers that he put in the teams prescribed in his permit, and operated during the winter, but did not cut a million feet board measure because the timber was not on the land assigned him, as limited by the permit to Jellerson, in consequence of which limit he cut 3 or 400,000 feet less than he otherwise should have cut with the same teams and in the same time; and that the plaintiff was obliged, by the defendant's violating his agreement as already set forth, to cut inferior timber, and haul it a longer distance, &c., to the damage of the plaintiff, &c.

There was evidence tending to show that the defendant represented to Mansur, that the territory he had engaged to Jellerson extended no further west than the most eastern point of Pleasant lake, and other evidence tending to show that the territory thus engaged was to extend far enough west for a winter's work for two teams.

The plaintiff offered in evidence the writ, judgment and docket entries in a case, *Jellerson* v. *Small & others*, for an al-

leged trespass on territory embraced in Jellerson's permit; but the Court excluded them.

The plaintiff also offered a letter from Mansur, his agent, to him, written immediately after the bargain with Gilman; but it was not admitted.

There was much other testimony, not pertinent to the points on which the case turned.

The plaintiff requested the Court to instruct the jury, that if the defendant, at the time he agreed to give the permit, and did give it to the plaintiff, represented to the plaintiff's agent that the exception extended no further west than the easternmost point of Pleasant lake, when in fact the defendant had promised Jellerson a permit extending far enough west for a winter's work for two teams, and the plaintiff suffered damage by such representation, he was entitled to recover such reasonable and proximate damage as he is shown to have suffered, whether such representation was made from misrecollection or mistake. And that, if the defendant gave to the plaintiff a permit, and afterwards gave one to Jellerson covering part of the same territory, under which the latter cut timber embraced in the plaintiff's permit, whereby the plaintiff suffered damages, he was entitled to recover such damages in this action.

The Court, CUTTING, J., presiding, declined giving these instructions, but instructed the jury, that this action could not be maintained, if the jury found such misrepresentations made by the defendant, as alleged by the plaintiff, unless they also found that such misrepresentations were wilfully false, and were made by the defendant with the intent to deceive and injure the plaintiff.

The jury returned a verdict for the defendant.

The plaintiff filed exceptions to the rulings of the Court.

*J. Granger* and *Blake & Garnsey*, for the plaintiff.

1. The letter of Mansur to the plaintiff was part of the *res gestæ*, and should have been admitted. 1 Greenl. Ev., § 108; *Thorndike* v. *Boston*, 1 Met., 242; *Allen* v. *Duncan*, 2 Pick., 308.

2. The requested instruction should have been given. If the plaintiff was led into a contract by an untrue representation, why should not he be remunerated for the loss he suffered thereby? 2 Parsons on Con., 268, ed. 1845. If a party makes a false representation to promote his own interest, without knowing whether it is true or false, he is liable for the damage arising therefrom. *Stone* v. *Denny*, 4 Met., 151; *Hazard* v. *Irwin*, 18 Pick., 96. The representation that the part engaged to Jellerson was that part east of the easternmost point of the lake, was, in fact, a promise and warranty that the permit given to the plaintiff covered all the territory on the south mile strip west of that point. But the permit given to Jellerson embraced the whole of the south mile strip, to the west line of the defendant's land, if necessary for Jellerson's winter's work. This was a direct breach of the contract, to the great damage of the plaintiff.

3. The instruction given was erroneous. A false representation in many cases furnishes a ground of action, although made with no intent to deceive. It is so in cases of insurance, where there is an implied *warranty* that the representations are true. So with representations of landlords as to the condition of tenements they offer to let. The consequences are often as injurious to the other party, whether the representations are made for the purpose of deceiving, or simply through misinformation.

*Madigan* argued further for the plaintiff, and cited *Taylor* v. *Ashton*, 11 M. & W., 413, and cases cited; *Moers* v. *Heyworth*, 10 M. & W., 156; *Adamson* v. *Jarvis*, 12 Moore, 241; *Lobdell* v. *Baker*, 1 Met., 200, 201.

*Hathaway*, for the defendant, contended that the instructions given to the jury were correct, and that the case furnished no ground for the instructions requested and refused.

The letter of Mansur to the plaintiff was mere conversation between the plaintiff and his agent, in the absence of the defendant, and, as such, inadmissible.

The declaration in the writ was insufficient, and set forth

no cause of action. It does not allege fraud, nor that the representations made were false. 2 Greenl. Ev., 230, *a*, 6th edition; *Hammatt* v. *Emerson*, 37 Maine, 308.

The permit to the plaintiff was effectual, in accordance with the representations made by the defendant at the time, and could not be limited by a subsequent permit to Jellerson.

The promises of the defendant to grant permits, both to the plaintiff and to Jellerson, were void, being verbal only, and both being for the sale of an "interest in and concerning real estate." R. S., c. 111, § 1.

The opinion of the Court was drawn up by

MAY, J. — The plaintiff's declaration, in substance, alleges that the defendant contracted with him for a permit to cut timber in the winter of 1856 and 7, on *all* of a certain tract of land then owned by the defendant, in township No. 4, range 3, west of the east branch of the Mattawamkeag, *excepting so much as he had before engaged to one Josiah Jellerson;* and that the defendant, at the time of making said contract, represented and stated to one Mansur, the plaintiff's agent, with whom said contract was made, what were the limits of that part of said tract which had been engaged to Jellerson, and upon which Jellerson had, or was to have a permit for two horse teams; and further, that the plaintiff, relying upon said representations, and under the expectation that he was to have, for his operations, all the defendant's land in said township, except what had been definitely pointed out as the part engaged to Jellerson, did, on the 14th of October, 1856, take a permit of the defendant, of all his said tract, "excepting that part engaged to Jellerson," supposing that he thereby acquired the right to operate with two six ox teams, or their equivalent, upon all the tract in said township belonging to the defendant, except what had been represented and pointed out to Mansur, his agent, as the part that had been engaged to Jellerson, and did then and there bind himself in said permit to take off the ensuing winter not less than one million feet of timber, board measure. The

plaintiff then alleges that the defendant, being unmindful of his contract, and in violation thereof, did, on the 3d day of November, then next, give a permit to Jellerson for two or more horse teams, which included a much larger part of said tract than the part which had been represented and pointed out by the defendant as the part previously engaged to Jellerson ; and that Jellerson thereupon entered upon that part which had not been so pointed out, and which the plaintiff supposed had been and was included in his permit, and cut and carried away large quantities of timber, to the great injury of the plaintiff and his operations, with the knowledge and approval of said defendant. The plaintiff then sets out more specifically what he did and prepared to do, under his permit, and the damages which he sustained by the act of the defendant in granting to Jellerson the subsequent permit as aforesaid, and from the interference of Jellerson with his rights by his acts and proceedings under the same.

To this declaration the defendant pleaded that he never promised, upon which plea issue was joined. Both parties, therefore, notwithstanding all that has been said in argument about the nature of the action, have treated it as an action of assumpsit. The trial proceeded upon this ground, and to this no exception has been taken. The declaration alleges no warranty, and sets forth no allegation of fraud or intentional deceit. The only ground of action set forth, if any, consists in the fact that the defendant misstated the limits of the land which he had before engaged to Jellerson, and afterwards gave Jellerson a permit covering more land than he had represented as the part engaged to him, and that Jellerson afterwards entered thereon with the knowledge and approbation of the defendant, and did acts which were greatly prejudicial to plaintiff.

From the bill of exceptions, as presented, we must presume that the evidence applicable to the various allegations contained in the writ, was submitted to the jury with appropriate instructions, unless the specific instructions which were

requested, ought to have been given, or those which were given instead of them are erroneous.

The first requested instruction relates wholly to the effect of the false representations and statements said to have been made by the plaintiff, at the making of the contract, even though the jury should find that they were made from mis-recollection or mistake.   The presiding Judge was requested· to instruct the jury that such representations, " if false, would entitle the plaintiff in this action to recover such reasonable and proximate damages as he had shown that he suffered by it, whether such representation was made from misrecollec-tion or mistake."   The word " whether," in this request, seems to have been used in the sense of "if"—or, perhaps, the words " or not" were accidentally omitted after the word " mistake." The Judge appears to have so understood the request, and thereupon, instead of complying with it, proceeds to instruct the jury that *this action* cannot be maintained, if the jury find such misrepresentations made by the defendant, as contended for by the plaintiff, unless they also find that such misrepre-sentations were false, and made by the defendant with an in-tention to deceive and injure the plaintiff.

The writ, as we have seen, contains no promise which such representations, if false, and innocently made, could possibly tend to prove.   It is nowhere sufficiently alleged that the defendant promised the plaintiff that any specific portion of the defendant's tract of land in township No. 4, range 3, was the portion which had been previously engaged to Jellerson. Proof, therefore, that false representations were made by the defendant through misrecollection or mistake, could have no tendency to support the plaintiff's declaration in his writ, if it is to be regarded as a declaration in assumpsit.   This requested instruction was, therefore, rightly withheld, and the plaintiff has no cause of complaint on account of the instruc-tions which were given, because these gave to the plaintiff the full benefit of the false representations relied on, if made with a design to defraud or deceive, in the same manner, and to the same extent as if his action were an action on the case

in the nature of deceit. They were more favorable to the plaintiff than he had a right to expect, when we look at the promises alleged in the writ, and consider that both parties had framed their pleadings solely with reference to them. The question does not arise in this case, whether an action of assumpsit can be maintained upon a promise, arising out of mutual mistake and misapprehension of facts in regard to the subject matter of a contract, executed in part or in whole, whereby one party has been greatly injured, because no such promise is alleged. The variance between the proof of the facts recited in the request, and the allegations in the writ, assuming that the action is assumpsit, as the parties have treated it, is fatal. There appears to be no ground for the exceptions, on account of the non-compliance of the Judge with this particular request, or by reason of the instructions which were given.

But the presiding Judge was further requested to instruct the jury that, if the defendant gave to the plaintiff a permit which covered a certain territory, and shortly afterwards gave to Jellerson a permit covering a part of the same territory, in express words or by implication, under which Jellerson cut timber embraced in the plaintiff's permit, whereby the plaintiff suffered damage, he is entitled to recover for such damages in this action. This requested instruction was properly withheld, and for the same reasons stated with reference to the other. The writ alleges no promise that the defendant would not permit others to cut upon the same land upon which the plaintiff was to operate. It is true that whatever rights the plaintiff had acquired by his permit, the defendant could not properly interfere with; and if he did so, or permitted others, with his knowledge and approbation, so to interfere, he might be held liable therefor in an appropriate action. Such unlawful interference, however, would not, if proved, tend to support any promise alleged in the plaintiff's writ. Such acts would be tortious, and we see nothing in the writ which made it the duty of the Judge to comply with this request.

Again, it is urged that there was error in excluding a let-

Small *v.* Gilman.

ter written to the plaintiff, by Mansur, while acting as his agent, and immediately after he had concluded the bargain with the defendant, for the plaintiff's permit. It does not appear that the letter contained any thing material, nor for what purpose it was offered. It is said, in the argument for the plaintiff, that it contained an account from Mansur of what he, as his agent, *had* accomplished. It is not perceived upon what ground such a letter could have been admissible. It is a mere declaration of the agent as to what acts he had performed, and about which he was permitted to testify fully. It is not, as now contended, a part of the *res gestæ.* It relates to transactions that were past. Such declarations of an agent, whether in writing, or parol, are but hearsay. If it was offered for the purpose of corroborating Mansur as a witness, it was clearly inadmissible for that purpose.

That the writ, judgment and docket entries in a former case of Jellerson against this plaintiff and others, which was an action for the alleged interference of the present plaintiff with the rights of said Jellerson under his permit, were improperly excluded, is not now contended. That they were properly rejected is beyond question. The result is, that there being no error in the matters excepted to, the defendant is entitled to judgment on the verdict.

*Exceptions overruled and*
*Judgment on the verdict.*

TENNEY, C. J., RICE, APPLETON, CUTTING and KENT, JJ., concurred.